HUGH M. ALCORN, STATE'S ATTORNEY, EX REL. WILLIAM A. HENDRICK *vs.* VINCENT L. KEATING.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 2d—decided November 5th, 1935.

*Ernest L. Averill,* with whom was *Raymond A. Johnson,* for the relator.

*Edward J. Daly,* Attorney General, with whom, on the brief, was *Charles J. McLaughlin,* Deputy Attorney General, for the respondent.

HINMAN, J.   On February 13th, 1929, pursuant to the provisions of § 1 of Chapter 297 of the Public Acts of 1927, Governor Trumbull submitted to the Senate the nomination and appointment of William A. Hendrick of New Haven to be a member of the board of finance and control for the term of six years from July 1st, 1929.   On the following day, upon a favorable report of the committee on executive nominations, a resolution was passed by the Senate confirming this nomination and thereafter the Governor issued his commission to Hendrick, who duly qualified and commenced his duties from July 1st, 1929.   On April 23d, 1935, Governor Cross submitted to the Senate a communication nominating and appointing Vincent L. Keating of Bridgeport to be a member of the board for the term of six years from July 1st, 1935.   The communication was referred to the committee on ex-

ecutive nominations but that committee made no report thereon to the Senate and on June 5th the General Assembly adjourned without further action having been taken with respect thereto. On July 2d, 1935, Governor Cross issued to Keating a commission appointing him a member of the board, to fill a vacancy, for the unexpired portion of the term ending six years from and after July 1st, 1935. Keating accepted the appointment and on July 11th took the oath of office and, claiming to be a member of the board, presented himself to act as such. Hendrick also appeared on the same day, claiming to be still a member, but the board voted that Keating be recognized as a member of the board, declined to recognize Hendrick, and Keating has since continued to act.

This action was brought on July 11th, the relator claiming that as no person had been appointed by the Governor with the advice and consent of the Senate for the term commencing July 1st, 1935, no successor had been appointed and qualified as provided by statute and that, therefore, his term has not expired and will not expire until a successor is appointed by the Governor with the advice and consent of the Senate. The case was reserved for the advice of this court, the facts above summarized were stipulated and the following questions are propounded: 1. Was there a vacancy on July 2d, 1935, in the office of an appointed member of the board of finance and control which could lawfully be filled by the Governor without the advice and consent of the Senate? 2. Was the relator on July 2d, 1935, a de jure member of the board of finance and control? 3. If the answer to the second question be in the affirmative, has the Governor the power to appoint a successor to the relator without the advice and consent of the Senate? 4. Is the re-

spondent legally entitled to succeed the relator as an appointed member of the board of finance and control?

The basic and determinative inquiry presented by this reservation is whether or not, on July 2d, 1935, there was a vacancy in the office of member of the board of finance and control which could lawfully be filled by appointment by the Governor without the advice and consent of the Senate? In the primary and technical sense "vacancy," as applied to an office or position, signifies a state of being not filled or occupied by a present incumbent. It is not, however, in every case to be taken in this strict sense. It may appear that in order to constitute the vacancy referred to in a constitutional or statutory provision and authorized to be filled in a manner therein prescribed, the office need not be physically vacant but it is enough that it is not occupied by a de jure officer. The term "vacancy," when so used, "applies as well to an office occupied by a usurper or a hold-over or de facto officer, as to cases in which, by death or resignation, the office is left without any incumbent." *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 547, 89 Atl. 172.

"Where an original power to appoint to an office is given to one person or appointing body and the power to fill vacancies in that office to another, and the law provides that the original appointment shall be for a definite term and until a successor is appointed, it is a vexed question whether, upon the termination of the fixed term, the original appointing body not having named a successor, the person or body having the power to fill vacancies may do so. The conflict of opinion centers around the question whether there is a vacancy at that time. The original appointing body having undoubted power (and the empowering statute contemplates that it will be exercised) to appoint a successor to fill the term before a vacancy occurs, if

this is done the office will be kept full. But, when this is not done, the question is whether the old incumbent continues to hold the office as a portion of his original term, or only continues in the office as a mere *locum tenens* or officer de facto. In some of these cases it is decided that the hold-over provision creates a new and contingent term; in others that it merely authorizes the old officer to temporarily fill the office, under his former qualification, as a *locum tenens;* and in others it is held that it continues the original term until a successor is appointed. When held that the old term continues, it is generally held that there is no vacancy to be filled by the authority having the power to fill vacancies; and where the incumbent holds over as a temporary holder of the office, it is generally held that a vacancy exists which may be filled by the authority empowered to fill vacancies. In all the cases it is a question of construing the provision authorizing the holding over, and this is affected by the nature of the office to be filled (i. e. whether elective or appointive), the language of the particular statute, and the circumstances of the particular case." *State ex rel. Lyons* v. *Watkins,* 87 Conn. 594, 597, 89 Atl. 178. It is generally held that where the provision is that the incumbent shall hold until his successor is elected or appointed and qualified, without other provisions or considerations modifying or affecting it, there is not a vacancy to be filled in the manner provided for the filling of vacancies by other than the power and in the manner originally authorized to elect or appoint. *State ex rel. Carson* v. *Harrison,* 113 Ind. 434, 16 N. E. 384; *State* v. *Howe,* 25 Ohio St. 588; *People ex rel. Baird* v. *Tilton,* 37 Cal. 614; *Shackelford* v. *West,* 138 Ga. 159; *People* v. *Edwards,* 93 Cal. 153; *Smoot* v. *Somerville,* 59 Md. 84; *State ex rel. Wood* v. *Hadley,* 64 N.

H. 473; and see cases 50 L. R. A. (N. S.) note, p. 368 et seq.; 22 R. C. L. p. 555.

Mechem on Public Officers (§ 128) cites and quotes from *People ex rel. Baird* v. *Tilton,* supra, as stating what seems to be the settled principle: "The constitution of California provided: 'When any office shall, from any cause, become vacant, and no mode is provided by the constitution and laws for filling such vacancy, the governor shall have power to fill such vacancy by granting a commission which shall expire at the end of the next session of the legislature. . . .' Under this section it was held that where an act creating an office and fixing the duration of the term provides that the officer shall be elected by the legislature and shall hold his office until his successor is elected and qualified, the failure of the legislature to elect at the expiration of the term does not create such a vacancy as the governor is authorized to fill by appointment, but the incumbent holds until his successor is elected by the legislature. If there was a vacancy, in any proper sense, after the expiration of the term and before the election and qualification of a successor, the statute itself filled the vacancy for the time being by providing that the old incumbent shall hold till a successor shall be elected and qualified. 'It was manifestly the intent of the constitution,' said the court, 'that the governor should appoint only where there is no party authorized by law to discharge the duties of the office. The object was to prevent a public inconvenience arising from the want of a party authorized for the time being to discharge the duties of a public office. When there is a party expressly authorized by law to discharge these duties temporarily, till the power upon whom the duty of election or appointment is devolved can regularly act, there is no occasion for calling into exercise this extraordi-

nary power vested in the governor to make a merely *temporary* appointment. There is no good reason for appointing a party to temporarily discharge the duties of an office when there is already a party expressly authorized by the constitution or laws to temporarily discharge those duties. The very reason upon which the power is vested in the governor fails, and the case provided for has not arisen. . . . The same construction should be given to the same language used in the same connection, in reference to a similar subject-matter, when used in a statute as when used in the constitution.' "

In the next section (§ 129) it is stated that "Where an incumbent of an office, elected by the people or some other body, or appointed by the executive with the consent of the Senate, is, by law, entitled to hold over until his successor is elected and qualified, the failure or neglect to appoint or elect his successor presents the same question considered in the previous section, and, in accordance with the rules there laid down, the office would not be deemed vacant, in such manner as to be filled by the appointment by the executive alone, there being a person authorized by law to continue to exercise the duties and functions of the office until a successor, duly elected and qualified, appears to assume it." Citing *State* v. *Howe,* supra. A "successor duly appointed and qualified" would mean, as applied to the present case, an appointee of the Governor with the advice and consent of the Senate, as distinguished from an appointee of the Governor alone.

In the absence of a definite provision that an officer shall hold not only for the specified term but also until his successor is elected or appointed and qualified, while the incumbent is held to be entitled to hold over until a successor is chosen, he is generally regarded as

holding de facto only, so that his occupancy of the office does not prevent the existence of a vacancy to be filled by the authority duly empowered to do so. *State ex rel. Lyons* v. *Watkins,* supra, pp. 598, 600; *State ex rel. Eberle* v. *Clark,* supra, p. 547; 46 C. J. pp. 968, 1058, and cases cited; 22 R. C. L. p. 598; Mechem, Public Officers, § 129, p. 64.

A right of the Governor to appoint the respondent to the office here in question must be predicated and depend upon the existence of a vacancy through the lack of an incumbent holding over under authority of the statute under which he was appointed and therefore holding de jure as well as de facto, and this, in turn, depends upon the construction of that statute, to be made having in view, as affecting it, "the language of the particular statute, and the circumstances of the particular case." *State ex rel. Lyons* v. *Watkins,* supra, p. 598. If this statute merely made the usual provisions for an appointment for a specified term "and until his successor is appointed and qualified," and authorized the Governor to fill any vacancy until some specified time when opportunity would have been had for an appointment with the advice and consent of the Senate, as "until the rising of the next succeding General Assembly" (Public Acts, 1909, Chap. 93, hereinafter referred to), or until "the sixth Wednesday of the next session of the General Assembly," as specified by the statute authorizing the Governor to fill vacancies when no other provision therefor has been made (Cum. Sup. 1935, § 11c), it would be clear, in our opinion, that the relator would be authorized thereby and entitled to hold over until a successor had been appointed with the advice and consent of the Senate. A fairly typical example of such a statute is afforded by Chapter 93 of the Public

Acts of 1909, quoted in a footnote, the construction and effect of which were subjects of discussion by reason of the failure of the Senate in 1911 to confirm an appointment of a highway commissioner made by the Governor. See Report of Attorney General, 1913-1914, p. 26. In that instance, as in the present one, the appointment of the incumbent, in 1907, and the Senate resolution confirming it, specified only the statutory term (there four years) without adding "until his successor is chosen and qualified," but the Governor (Baldwin) took no action under the vacancy provision of the statute.

The statute under which the relator was appointed was Chapter 297 of the Public Acts of 1927, the relevant portions of § 1 reading as follows: "There is created an administrative department of the state government which shall be designated and known as the department of finance and control. The rights, powers and duties of the department of finance and control, as in this act provided, are vested in, and shall be exercised, administered and discharged by, a board of finance and control of ten members comprising the governor, who shall be, ex officio, chairman, the secretary of the state, the treasurer, the comptroller, the attorney general and the tax commissioner, all five, also ex officio, a commissioner of finance and control, who shall be appointed by the governor, by and with the advice and consent of the senate, for a term of four years, and three electors to be appointed by the governor, as hereinafter provided. On or before

---

"* * * There shall be appointed by the governor with the advice and consent of the senate, on or before May first, 1903, and quadrennially thereafter, a highway commissioner, who shall hold office for four years from the first day of July next succeeding his appointment and until his successor is chosen and qualified. If any vacancy occur, the governor shall fill such vacancy until the rising of the next succeeding general assembly. * * *"

the first day of July, 1927, the governor shall appoint one elector who shall hold office for two years and two other electors who shall hold office for four years and six years respectively. During the regular session of the general assembly in 1929, and biennially at each regular session of the general assembly thereafter, the governor shall nominate and, with the advice and consent of the senate, appoint one elector who shall hold office for six years from the first day of July next following his appointment. In each case an appointment shall be for the term hereinbefore designated and until a successor shall have been appointed and shall have qualified. The governor may remove any appointive member of the board at any time for cause after a hearing upon charges duly preferred. Any vacancy occurring among such appointive members shall be filled by the governor for the unexpired portion of the term, provided the appointment of the commissioner to fill a vacancy shall require the confirmation of the senate when it shall next convene."

Examination of these provisions discloses certain features which are significant as affecting their construction for present purposes. It is provided, first, that the member appointed in 1929 (who is the relator) and those biennially appointed thereafter each "shall hold office for six years from the first day of July next following his appointment." The further provision that "In each case an appointment shall be for the term hereinbefore designated and until a successor shall have been appointed and shall have qualified," is in a separate sentence, suggesting a possible differentiation in effect from the usual form where "these two provisions are both contained in the same sentence, closely connected by the copulative conjunction [and]." *State ex rel. Carson* v. *Harrison*, supra, p. 441. This may signify, instead of the effect of the

usual provision in automatically prolonging the term of office after expiration of the specified term without the choice of a successor, a privilege which might be exercised by specific provision in the appointment made, either to so extend the term or to expressly authorize a holding over *de facto*. As already noticed, the nomination of the relator and the resolution confirming it specified the term only as "six years from July 1, 1929," so under the latter suggested construction the privilege was not exercised.

Another distinctive feature is that the act appears to clearly contemplate that only one appointment shall be made at each regular session of the General Assembly. Consistently with this it is provided, further, that any appointment by the Governor to fill a vacancy shall be "for the unexpired portion of the term" instead of, as is usual, until the rising of, or a specified time during the next session of the Legislature. (Cum. Sup. 1935, § 11c, and e. g., General Statutes, § 2554) and only as to the appointment of the commissioner, and not as to any other member so appointed to fill vacancy, is there a requirement of confirmation by the Senate "when it shall next convene."

Due weight and significance can be accorded these features of the act only by construing it as intending that if an appointment be not made and confirmed in the prescribed way during the legislative session and in consequence no regularly appointed successor is provided at the expiration of the six year term, a vacancy is created which the Governor is authorized to fill. The only alternative construction would seem to be that the holdover incumbent could continue until appointment of a successor is confirmed by the Senate. If this was accomplished at a succeeding session and, as would be necessary, a regular appointment

for the full term was made at the same session, the plainly expressed intention that only one appointment should be made at any one session would be violated. If no successor was so appointed, the incumbent would continue to hold over until the session next preceding the expiration of another six year term, a result which surely could not have been intended. The intent of the statute is to place the primary responsibility for the choice of the appointed members of the board upon the Governor. To hold that, upon the failure of the Senate to confirm an appointment made by him, the incumbent would continue to hold office for the length of an entire term might well mean that one who is not selected by the Governor, and it may well be was not acceptable to the Senate, would continue in office for a period of six years. On the other hand, an appointment by the Governor running to the end of that term would preserve the plan of succession indicated by the act, and no other reason appears for the unusual liberality provided for as to time covered by such an appointment.

We are not unmindful that in the 1930 Revision of the General Statutes (§ 156) the holdover provision is changed to the usual form, but the rights of the relator must be determined by the act of 1927 under which his appointment was made. The Revision retains the provisions for one appointment at each regular session of the General Assembly and vacancy appointments by the Governor for the unexpired portion of the term. On the whole, we consider that the statute under which the relator was appointed may and should be so construed that the rising of the General Assembly, session of 1935, without having confirmed an appointment to the office, and the expiration of the relator's specified term of office, six years from July 1st, 1929, created a situation enabling the Governor to appoint

the respondent, under the vacancy clause, for the unexpired portion of the term of six years from July 1st, 1935.

Our answer to the first question reserved is Yes; to the second No; to the fourth Yes; no answer to the third is required.

No costs will be taxed in this court.

In this opinion the other judges concurred.