NEW HAVEN COMMISSION ON EQUAL OPPORTUNITIES EX REL. JOHN R. WASHINGTON *v.* YALE UNIVERSITY

THE VISITING NURSES ASSOCIATION OF NEW HAVEN, INC. *v.* THE COMMISSION ON EQUAL OPPORTUNITIES OF THE CITY OF NEW HAVEN

BOGDANSKI, ARMENTANO, SHEA, WRIGHT and DALY, Js.

Argued February 6—decision released April 14, 1981

*John T. Grillo,* special assistant corporation counsel, and *Clarine Nardi Riddle,* deputy corporation counsel, with whom, on the brief, were *Charles G. Albom,* corporation counsel, and *Leander C. Gray,* assistant corporation counsel, for the appellant (plaintiff in the first case and defendant in the second case).

*Robert B. Snow, Jr.,* with whom, on the brief, were *S. Robert Jelley* and *Kenneth Rosenthal,* for the appellee (defendant in the first case).

*David A. Reif,* with whom, on the brief, were *John H. Peck, Jr.,* and *Linda Handman,* for the appellee (plaintiff in the second case).

BOGDANSKI, J. Because these two cases present the identical legal issue they are consolidated for the purposes of this opinion.

In *New Haven Commission on Equal Opportunities* v. *Yale University,* the complainant, John R. Washington, was a computer operator employed by the administrative data systems of the defendant Yale University. After Yale University terminated his employment, Washington filed a grievance

under Yale's grievance procedure claiming racial discrimination in the termination. After a hearing, the grievance panel concluded that there had been no discrimination. On February 24, 1977, Washington filed a claim with the plaintiff New Haven Commission on Equal Opportunities (commission). The commission held a hearing and, on June 8, 1978, ordered Washington reinstated with back pay.

On September 18, 1978, the commission instituted the present action to enforce its order, in accordance with § 12 1/2-7 (a) of the equal opportunities ordinance of the city of New Haven. As an affirmative defense, Yale alleged that the board of aldermen of New Haven lacked the power to adopt the ordinance in question and that the commission's action in the pending matter was a nullity. The trial referee (*Thim, J.*) agreed with this contention and rendered judgment for the defendant. The plaintiff then took this appeal.

In *The Visiting Nurses Association of New Haven, Inc.* v. *Commission on Equal Opportunities,* Lillian Cowan, an employee of the plaintiff Visiting Nurses Association complained that she was discharged because of her race. The commission, after a hearing, rendered a decision in her favor and ordered that she be reinstated to her former position with back pay. On appeal to the Superior Court judgment was rendered for the plaintiff, from which judgment the defendant has appealed.

The commission was created by an ordinance of the New Haven board of aldermen which provides that the commission may hear complaints regarding unfair employment practices and take the necessary steps to protect the constitutional rights, privileges and immunities of complainants.

Both the Visiting Nurses Association and Yale University contend that the city of New Haven has only such powers as the state legislature grants to it and that the legislature has made no such grant of authority. On the other hand, the commission argues that enacting the ordinance was a valid exercise of the powers of the city under the Home Rule Act, General Statutes §§ 7-194 (25), (26) and (29).

The issue is whether the board of aldermen of New Haven had the authority to grant the powers set out in the ordinance to the commission. The powers specifically at issue are those granting authority to the commission to determine matters of racial discrimination in employment, and to issue and enforce orders to correct such discrimination. We conclude that subsections 7-194 (25), (26) and (29) of the Home Rule Act do not authorize a municipality to create a commission to resolve employment discrimination complaints.

Section 7-194 of the General Statutes provides, in relevant part, that "all towns, cities or boroughs which have a charter or which adopt or amend a charter under the provisions of this chapter shall have the following specific powers in addition to all powers granted to towns, cities and boroughs under the constitution and general statutes: . . . (25) To preserve the public peace and good order, to prevent and quell riots and disorderly assemblages and to prevent disturbing noises; (26) To make and enforce police, sanitary and other similar regulations and to protect or promote the peace, safety, good government and welfare of the town, city or borough and its inhabitants; . . . (29) To define, prohibit and abate within the town, city or borough all nuisances and causes thereof and all

things detrimental to the health, morals, safety, convenience and welfare of its inhabitants and to cause the abatement of any nuisance at the expense of the owner or owners of the premises on which such nuisance exists."

It is settled law that as a creation of the state, a municipality has no inherent powers of its own. *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980); *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88 (1976); *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449 (1965); *State ex rel. Coe* v. *Fyler,* 48 Conn. 145, 158 (1880). On the other hand, a municipality does have such powers as are necessary to enable it to discharge its duties and carry into effect the objects and purposes of its creation. *City Council* v. *Hall,* supra; *New Haven Water Co.* v. *New Haven,* supra. The power to form a commission to resolve employment discrimination complaints is a significant power which, however, is not necessary to protect the general welfare of New Haven residents, since state and federal laws provide alternative and adequate remedies to a New Haven resident who claims to have been a victim of discrimination.

In *City Council* v. *Hall,* supra, we held that § 7-194 (26) did not authorize a municipality to grant to its governing or legislative body the power to issue subpoenas. Since § 7-194 (26) is not sufficient to grant the power to issue subpoenas, it is surely not sufficient to grant the power to create an equal opportunities commission. Similarly, the language of §§ 7-194 (25) and (29) cannot be given such an expansive construction.

Section 7-194 consists of a detailed enumeration of powers granted to municipalities. In *State ex*

*rel. Barnard* v. *Ambrogio,* 162 Conn. 491, 497–98, 294 A.2d 529 (1972), we noted "[t]hat the legislature went to the extent of precisely enumerating fifty-seven specific powers without mentioning a civil service system indicates that it did not intend to grant the municipalities such a power by way of a charter adoption." It is generally held that the express enumeration of powers granted to municipalities constitutes an exclusion of all other powers not expressly delegated to them. 2 McQuillin, Municipal Corporations (3d Ed. Rev. 1979) § 10.23, p. 82. See also *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957) ("enumeration of powers in a statute is uniformly held to forbid the things not enumerated").

The commission contends that there is a presumption of constitutionality of a statute, and that the trial court did not give the present ordinance the benefit of this presumption. No such presumption can be involved here, since the ordinance is not being challenged on constitutional grounds. The issue here is purely a question of statutory interpretation. It is the general rule that an ordinance is presumed valid; where, however, the power of the municipality to pass the ordinance is not clear, no such presumption attaches. 56 Am. Jur. 2d, Municipal Corporations § 382.

Cases cited by the commission, e.g., *Figarsky* v. *Historic District Commission,* 171 Conn. 198, 368 A.2d 163 (1976), and *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 40 A.2d 177 (1944), are inapposite. In those cases the legislature had specifically delegated to the municipality the right to enact an ordinance of the type challenged. Those cases discuss whether the state's police power could regulate certain conduct. Here, the issue is whether the state has

elected to retain that power or delegate it under General Statutes § 7-194.

The commission contends that Public Acts 1980, No. 80-403, now General Statutes § 7-148 (a) (27), §§ 7-148i through 7-148n,[1] which empowers municipalities to establish equal rights and opportunities commissions, expressly permits the commission to continue existing and thus recognizes and makes certain its prior legal existence. In *Hall,* we held that a specific grant of power presupposes that the power

[1] "AN ACT EMPOWERING MUNICIPALITIES TO ESTABLISH EQUAL RIGHTS AND OPPORTUNITIES COMMISSIONS.

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. (NEW) Any town, city or borough, by charter or ordinance, may adopt a code of prohibited discriminatory practices and may establish or designate a board, commission, council, committee or other agency to investigate any allegation of discriminatory practice. For the purposes of this act, "discriminatory practice" means a violation of sections 31-126, 36-437, 53-34, 53-35 and 53-35a of the general statutes.

Sec. 2. (NEW) Any board, commission, council, committee or other agency established or designated pursuant to this act may be given the following powers; (1) The power to issue subpoenas or subpoenas duces tecum, enforceable upon application to the superior court, to compel the attendance of persons at hearings and the production of books, documents, records and papers; (2) the power to issue written interrogatories and require written answers under oath thereto, enforceable upon application to the superior court; (3) the power to hold hearings relating to any allegation of discriminatory practice which it has found reasonable cause to believe has occurred and to issue any appropriate orders; and (4) the power to petition the superior court for enforcement of any order issued by it upon a finding that a violation of the local code of prohibited discriminatory practices has occurred, including the power to petition the superior court for temporary injunctive relief upon a finding that irreparable harm to the complainant will otherwise occur.

Sec. 3. (NEW) Any complaint filed pursuant to this act shall be made under oath. No finding of a violation of a local code of prohibited discriminatory practices shall be made except after a hearing. The respondent at any such hearing shall be given reasonable advance written notice of the hearing, shall be entitled to be

did not already exist somewhere else in the Home Rule Act. If the power to create the commission already had been delegated to municipalities under § 7-194, there would have been no need for Public Act 80-403. It should be presumed that a law was adopted in view of existing relevant statutes and that the legislature intended it to be read with them so as to constitute one consistent body of law. We may not presume that the legislature has enacted futile legislation or that a change in a law was made without a reason. *City Council* v. *Hall,* supra, 251.

represented by counsel, and shall be permitted to testify and present and cross-examine witnesses. The decision resulting from the hearing shall be in writing and shall include written finding of the facts upon which the decision is based.

Sec. 4. (NEW) Any person aggrieved by any order of the board, commission, council, committee or other agency established or designated pursuant to this act may appeal to the state commission on human rights and opportunities. Any such appeal shall be filed within thirty days of the mailing of the written decision.

Sec. 5. (NEW) Any action by the state commission on human rights and opportunities which involves the same parties and subject matter as an action filed with a local commission on equal rights and opportunities shall supersede the action brought with the local commission, except that the state commission on human rights and opportunities may admit into evidence the results of any investigation of a complaint filed with the local commission, or the decision entered on such a complaint by the local commission, and accord to such investigation or such decision the weight that may be appropriate under the facts and circumstances of the case.

Sec. 6. (NEW) Any board, commission, council, committee or other agency which has been established or designated to investigate allegations of discriminatory practices by the charter or an ordinance of any town, city or borough prior to the effective date of this act may assume the powers granted to such agencies under this act if the charter or ordinance creating or designating such agency is not in conflict with the provisions of this act.

Sec. 7. Subsection (a) of section 7-148 of the general statutes, as amended by section 1 of public act 79-531 and section 1 of public act 79-618, is amended by adding subdivision (27) as follows:

(NEW) (27) Adopt a code of prohibited discriminatory practices. [The remaining sections of the Act are irrelevant to the subject matter of this action.]"

In *Yale University* the trial court held that chapter 12 1/2 of the New Haven Code is invalid, while the court in *Visiting Nurses* apparently limited its ruling to the commission's authority in employment practices. Chapter 12 1/2 includes a separate article, "Article II. Hiring Practices in the Construction Trades," which creates a contract office within the commission for the purpose of encouraging minority employment, eliminating discrimination, and achieving other objectives with respect to construction contracts awarded by the city of New Haven. The provisions of the New Haven Code other than those relating to employment discrimination by employers having no contractual relationship with the municipality are not relevant to the present case. The code contains a general severability clause in § 1-6 as does the Equal Opportunities Chapter, § 12 1/2-33. We, therefore, limit this ruling to the ordinances relating to employment discrimination. *State* v. *Stoddard*, 126 Conn. 623, 633–34, 13 A.2d 586 (1940).

There is error in part; the judgment is affirmed except as to the holding of invalidity of the entire ordinance in *New Haven Commission on Equal Opportunities* v. *Yale University*.

There is no error in *The Visiting Nurses Association of New Haven, Inc.* v. *Commission on Equal Opportunities*.

In this opinion the other judges concurred.